FILED
IN OPEN COURT

FEB - 6 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

D'MONI ANTHONY MOTEN,

Defendant.

No. 1:26-cr-19

## STATEMENT OF FACTS

The United States and the defendant, D'Moni Anthony Moten, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1.      Beginning at least in and around December 2021, and continuing thereafter up to and including November 12, 2025, the exact dates being unknown, in Fairfax County, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant D'MONI ANTHONY MOTEN did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with DONTAVIOUS WHITAKER and others, both known and unknown, to unlawfully, knowingly, and intentionally distribute and possess with intent to distribute: (1) 100 grams or more of a mixture or substance containing a detectable amount of Carfentanil, a Schedule II substance and analogue of N-phenyl-N-[1- -5gcB;pc(g]p-4-piperidinyl] propanamide; (2) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1- -5gcB;pc(g]p-4-piperidinyl] propanamide, commonly referred to as fentanyl, a Schedule II controlled substance; and (3) one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i), (b)(1)(A)(vi), and 846.

2.     On or about November 12, 2025, in Fairfax County, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant did unlawfully, knowingly, and intentionally possess with intent to distribute and attempt to possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of Carfentanil, a Schedule II substance and analogue of N-phenyl-N-[1-☐ -5̶g̶c̶B̶i̶p̶c̶(̶g̶]̶p̶]̶4-piperidinyl] propanamide, in violation of Title 21, United States Code, Section 841.

3.     On or about November 12, 2025, the defendant, in Fairfax County, Virginia, within the Eastern District of Virginia, did knowingly, intentionally, and unlawfully possess a firearm in furtherance of a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, that is, conspiracy to distribute 100 grams or more of a mixture or substance containing a detectable amount of an analogue of fentanyl, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, and 1 kilogram or more of heroin, as set forth in Count One of this Information, in violation of Title 18, United States Code, Section 924(c).

4.     During the course and in furtherance of this offense, the defendant personally distributed or possessed with intent to distribute, or it was reasonably foreseeable to the defendant that his co-conspirators distributed or conspired to distribute in furtherance of the conspiracy, at least 548 grams of a mixture and substance containing fentanyl, at least 829 grams of a mixture and substance containing carfentanil, and at least 1,100 grams of a mixture and substance containing a detectable amount of heroin.

5.     In 2025, the Drug Enforcement Administration ("DEA") began investigating the defendant, co-defendant Dontavious Whitaker ("Whitaker"), and other unindicted co-conspirators for the distribution of fentanyl in the Eastern District of Virginia and elsewhere. This investigation followed in part from the review of a device associated with another individual involved in large-scale trafficking of counterfeit pressed pills containing fentanyl (hereinafter,

2

"fentanyl pills").[1] During review of this device, law enforcement located conversations between that individual and Whitaker discussing narcotics pricing and quality and engaging in suspected narcotics transactions. These conversations included drug slang which indicated that the participants were speaking about fentanyl pills.

6. On February 19, 2025, the United States Marshals Service ("USMS") attempted to stop two vehicles in Alexandria, within the Eastern District of Virginia—a black Range Rover being operated by Whitaker and a red Jaguar being operated by the defendant. Both vehicles fled and both the defendant and Whitaker attempted to flee on foot. The Range Rover being operated by Whitaker was subsequently searched by law enforcement, resulting in the seizure of the following: a Glock 27 semi-automatic handgun bearing serial number BWEL656, containing a round in the chamber and 13 unfired rounds in an attached magazine; over 1,800 fentanyl pills; various pills contained in prescription pill bottles; multiple pounds of suspected marijuana; and a digital scale. The fentanyl pills were submitted to the DEA's Mid-Atlantic Laboratory ("DEA Lab") for analysis. Subsequent analysis showed that the pills contained approximately 203 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance. The Jaguar

---

1 Law enforcement officers commonly find narcotics dealers selling round blue pills imprinted with "M" and "30" which mimic the markings associated with oxycodone 30mg pills manufactured by Mallinckrodt Pharmaceutical. The widespread distribution of the counterfeit pills is marked by popular culture terminology such as "blues," "M-30s," "Perc's," and "Perc-30's." "Perc" is a commonly used slang reference that is short for "Percocet" which is a name brand prescription pain killer that contains oxycodone and acetaminophen. It is common in the Eastern District of Virginia, and throughout the United States, for counterfeit pressed pills containing fentanyl and/or heroin or other opioids to be manufactured to look like legitimate oxycodone pills. Historically, counterfeit pressed M30 pills contained primarily fentanyl; however, in recent years, pill seizures have revealed pills containing heroin, nitazene-class synthetic opioids, morphine derivatives, and other opioids. On occasion, confidential sources or undercover officers will negotiate for the purchase of fentanyl pills and later lab testing will reveal the pills did not contain fentanyl but contained another opioid substance, such as heroin. For consistency, the term "fentanyl pills" will be used throughout this affidavit when referring to counterfeit pressed pills containing fentanyl and/or other opioids.

operated by the defendant was subsequently searched and found to contain the following: a Glock 29 semi-automatic handgun bearing serial number BWKB219, containing a round in the chamber and 10 unfired rounds in an attached magazine; a large quantity of suspected marijuana; various pills contained in pill bottles; 32 grams of cocaine (confirmed via testing at the DEA Lab); and over 1,000 fentanyl pills.  The fentanyl pills were submitted to the DEA Lab for analysis. Subsequent analysis showed that the pills contained approximately 109 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance.  Additionally, a search warrant was executed on a nearby residence which contained an unindicted co-conspirator, resulting in the seizure of two firearms—a Glock 26 semi-automatic handgun bearing serial number USS187, with a round in the chamber and 17 unfired rounds in the attached magazine, and a Glock 19 semi-automatic handgun bearing serial number BSXB676, with a round in the chamber and 33 unfired rounds in the attached magazine—over a thousand fentanyl pills, approximately $182,568, a money counter, Whitaker's Maryland driver's license, credit card, and assorted paperwork, and the defendant's driver's license and birth certificate. The fentanyl pills were submitted to the DEA Lab for analysis.  Subsequent analysis showed that the pills contained approximately 120 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance.

7.    Over the course of the investigation in this case, law enforcement conducted several surveillance operations and observed the defendant and Whitaker involved in numerous suspected narcotics transactions.  Law enforcement also observed both defendants regularly frequenting a location in Lorton, Virginia ("WOODSIDE RESIDENCE"), in which Whitaker appeared to reside prior to moving to an address at McCauley Way in Lorton, Virginia ("MCCAULEY RESIDENCE").  Both defendants were regularly observed at the MCCAULEY RESIDENCE and also at an address on Fairfield Woods Court in Lorton, VA ("FAIRFIELD RESIDENCE"), which was identified as a stash location based on law enforcement observations that the defendant and/or

4

Whitaker visited the FAIRFIELD RESIDENCE on a near-daily basis for several weeks, remained inside for short periods of time, and often exited the residence carrying bags not previously in their possession.

8.    Additionally, both the defendant and Whitaker were often observed in Whitaker's Mercedes ("Mercedes") or in a Dodge Durango rental car (the "Durango"), to include during suspected drug transactions or controlled purchases.   The defendant and Whitaker were regularly observed in the Mercedes driving to numerous locations to engage with other individuals for a short duration either in the Mercedes, in the vehicle of another individual, or through vehicle windows.   During these interactions, the defendant or Whitaker acted in a manner consistent with hand-to-hand narcotics transactions.   For example, on multiple occasions in September and November 2025, law enforcement observed the defendant or Whitaker provide items to individuals in other vehicles, or observed other persons enter the Mercedes for a very short duration while it remained parked in a location.   These interactions were generally short—a few minutes or less— and typically resulted in all parties departing the area within minutes.

9.    In addition to suspected narcotics transactions witnessed by law enforcement, law enforcement conducted controlled purchases with the defendant and Whitaker utilizing a confidential source (CS).   During the controlled purchases, the defendant and Moten were observed in the Durango.   The controlled substances sold to the CS during two controlled buys were submitted to the DEA Lab, where analysis confirmed the substances amounted to approximately 1,058 grams of a mixture and substance containing heroin.   Additionally, during an interaction between the defendant, Whitaker, and the CS (outside of the above-mentioned controlled purchases), the CS observed a gun in the defendant's possession and thousands of suspected fentanyl pills on Whitaker's lap.

5

10.     Furthermore, during one such surveillance operation, on July 16, 2025, investigators seized a trash bag from the communal dumpsters at the WOODSIDE RESIDENCE which had been brought out to the trash by unindicted co-conspirator 1 ("UCC-1").  Inside the bag, investigators located several fentanyl pills and a dry-cleaning receipt for a "Dontavrous Whitaker."  The pills were submitted to the DEA Lab, where they tested positive for Carfentanil, a Schedule II substance and analogue of N-phenyl-N-[1-☐ -phenylethyp☐4-piperidinyl] propanamide.  Carfentanil is a synthetic opioid 100 times more powerful than fentanyl.[2]

11.     Subsequently, on November 12, 2025, the DEA, along with other law enforcement agencies, executed search warrants on the MCCAULEY RESIDENCE, FAIRFIELD RESIDENCE, an apartment in which the defendant regularly resided ("SUNNYRIDGE RESIDENCE"), and the Mercedes.  During the execution of the search warrant on the MCCAULEY RESIDENCE, law enforcement encountered Whitaker and unindicted co-conspirator 2 ("UCC-2") in one of the bedrooms.  Underneath the bed in that bedroom, law enforcement located a loaded Glock 26 semi-automatic handgun bearing serial number BNKY919 with an extended magazine inserted and round in the chamber.  The firearm was sitting next to license plates for the Mercedes.  On the bedside table next to the bed, law enforcement located a car key to the Durango and the defendant's ID.  Within the bedroom, law enforcement also located slightly under $50,000 in U.S. Currency.  Another bedroom contained UCC-1, a loaded firearm, and approximately 33 fentanyl pills.  Later analysis at the DEA Lab confirmed that these pills contained approximately 3.7 grams of fentanyl.  The Mercedes was found at a car dealership in Woodbridge with approximately 1,000 fentanyl pills inside.  Later analysis at the DEA Lab

---

2 See DEA "Officer Safety Alert," https://www.dea.gov/sites/default/files/2018-07/hq092216_attach.pdf.

confirmed that the pills seized from the Mercedes contained approximately 108.18 grams of a mixture and substance containing Carfentanil.

12.    A subsequent search of the Durango, which was parked in the parking garage for the MCCAULEY RESIDENCE, revealed several bags full of fentanyl pills, a large quantity of suspected marijuana, and suspected cocaine.  Later analysis at the DEA Lab confirmed that the pills seized from the Durango contained the following:

a.  2,980 tablets contained approximately 319 grams of a mixture and substance containing Carfentanil;

b.  3779 tablets contained approximately 402 grams of a mixture and substance containing Carfentanil;

c.  945 tablets contained approximately 108.8 grams of a mixture and substance containing heroin;

d.  Tablet fragments contained approximately 116 grams of a mixture and substance containing fentanyl; and

e.  1 tablet contained approximately 0.091 grams of a mixture and substance containing fentanyl.

13.    Within the FAIRFIELD RESIDENCE, law enforcement seized five scattered fentanyl pills in the kitchen, as well as a 7.62 caliber Draco AK-47 style pistol bearing serial number PMD-54429 with a round in the chamber and the magazine next to the firearm.  Later analysis at the DEA Lab confirmed that one pill contained heroin, two pills contained fentanyl, and two pills contained acetaminophen.  Finally, the search of the SUNNYRIDGE RESIDENCE revealed a magazine for a 40-caliber Glock pistol underneath a mattress, as well as a prescription pill bottle and other records and documents in the defendant's name.

14.     During the course of the investigation, law enforcement obtained Apple iCloud accounts associated with Whitaker (hereinafter, "Whitaker's iCloud"). Following the search warrant, investigators performed an extraction on a phone identified as Moten's (hereinafter, "Moten's Phone"), which was located within the MCCAULEY RESIDENCE. During a search of Whitaker's iCloud, as well as the extracted data from Moten's Phone, investigators located evidence indicating that the defendant and Whitaker had been engaged in a conspiracy to distribute fentanyl pills since at least November 2021. Examples include the following: (1) a 2021 message from Whitaker telling the defendant "we gotta go pick these pills up," to which the defendant responds affirmatively; (2) the defendant's May 2022 message to Whitaker "I need some pills slime"; (3) Whitaker's December 2022 message to the defendant to "let [unindicted co-conspirator] know them pills was 270 short after you counted"; (4) the defendant's June 2023 message to Whitaker to "Bitch bring da pills for me mf"; (5) Whitaker's December 2024 message to the defendant "I got them pills for u"; and (6) Whitaker's April 2025 message: "Wya [where you at] trying get pills," to which the defendant responds: "Boutta go sell one of yo zips[3] shitt for u."

15.     Both Whitaker's iCloud and Moten's Phone also feature photos and videos of firearms, as well as slang references for firearms, such as "iron" and "drake." For example, in September 2022, the Whitaker asks the defendant "Wya [where you at] wit my iron bra . . . ," to which the defendant responds, "Onw [on my way]." Moreover, a March 31, 2024, discussion relates to the purchase of a "drake," a reference to a Draco AK-47-style firearm. The defendant and Whitaker discuss the price of the "drake," with Whitaker ultimately stating: "Bout to get just that joint from my man bra Fresh out the store wit the wood . . ." The Draco AK-47-style firearm

---

3 "Zips" is a slang term for a specific quantity of narcotics.

seized from the FAIRFIELD RESIDENCE has a wood foregrip and was purchased on June 5, 2024 from a dealer in Fredericksburg, Virginia. Additionally, a video located on Whitaker's iCloud dated May 20, 2023, depicts the defendant's hands counting U.S. currency. On the counter in front of the defendant are stacks of U.S. currency, a money counter, and a firearm with an extended magazine. Other photos on Whitaker's iCloud depict Whitaker holding large stacks of U.S. currency.

16. A further search of Whitaker's iCloud revealed a significant number of conversations with unindicted co-conspirators concerning the purchase and redistribution of large quantities of fentanyl pills. For example, between May and June 2025, Whitaker discussed the purchase of large amounts of fentanyl pills from unindicated co-conspirator 3 ("UCC-3"). Amounts negotiated in these conversations range from 25,000 to 80,000 pills. Additionally, during a conversation on June 16, 2025, UCC-3 tells the defendant that UCC-3 has "200 k[4] left of them." Messages between the defendant and Whitaker on Whitaker's iCloud include several references to UCC-3 between late 2023 and early 2025, to include the defendant telling Whitaker on March 19, 2025 to "Hit [UCC-3]."

17. Furthermore, messages between the defendant and Whitaker confirm that both defendants were engaged in fraudulently obtaining/renting apartments in the Eastern District of Virginia, in part to perpetuate their drug trafficking conspiracy. These conversations include discussions about the renting of the MCCAULEY RESIDENCE and the FAIRFIELD RESIDENCE (which were rented under stolen or fraudulent identities), fees associated with the FAIRFIELD RESIDENCE, and various apartments that could operate as "trap" or "home" locations.

---

4 "k" or "packs" are a reference to a "k-pack," or a quantity of 1,000 fentanyl pills.

18. The Mercedes, the diamond necklace featuring the University of Georgia's bulldog mascot, and all of the currency, jewelry, and luxury items seized from various residences and vehicles on February 19, 2025 and November 12, 2025, and listed in the Plea Agreement in this case, constitute proceeds or facilitated the offenses charged in the criminal Information in this case.

19. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

20. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

21. If the defendant breaches the plea agreement, then pursuant to the plea agreement, he waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

By: _____

Lauren E. Hahn
Special Assistant United States Attorney (LT)

10

**Defendant's signature:** After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, D'Moni Anthony Moten, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial the United States would have proved the same beyond a reasonable doubt.

Date: _____January 30, 2026_____

_____
D'Moni Anthony Moten
Defendant

**Defense counsel signature:** I am the defendant's attorney.    I have carefully reviewed the above Statement of Facts with him.    To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: _____February 2, 2026_____

_____
Robert Jenkins, Esq.
Counsel for the Defendant

11